1 | Tianyu Ju (State Bar Number: 323817)
Yu Hao Yao (State Bar Number: 344022)
2 | Glacier Law LLP
9660 Flair Dr., Suite 328
3 | El Monte, California 91731
Telephone: 312.448.7772
4 | Facsimile: 312.801.4587
iris.ju@glacier.law
5 | mickey.yao@glacier.law
Attorneys for Plaintiff

6

### UNITED STATES DISTRICT COURT

7

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

8

9
10 | SHENZHEN YANGJINMAOYI
CO., LTD. (d.b.a Yanjin-US)
          Plaintiff

11          v.

12 | HANGZHOU CHIC
INTELLIGENT TECHNOLOGY
13 | CO., LTD., AND UNICORN
GLOBAL, INC.
14          Defendants

Case No.:

**COMPLAINT FOR**
1) **VIOLATIONS OF SECTION 1 OF THE SHERMAN ACT (15 U.S.C §1)**
2) **VIOLATION OF SECTION 2 OF THE SHERMAN ACT (15 U.S.C §2)**
3) **VIOLATION OF THE CALIFORNIA CARTWRIGHT ACT (CAL. BUS. & PROF CODE §16720)**
4) **CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF CODE §17000)**
5) **TORTIOUS INTERFERENCE CONTRACTUAL RELATIONSHIP AND PROSPECITVE ECOMONIC ADVANTAGE**

**DEMAND FOR JURY TRIAL**

15
16
17
18
19
20

1    NOW COMES Plaintiff Shenzhen Yangjinmaoyi Co., Ltd. (d.b.a "Yanjin-US,"

2  or "Plaintiff"), by and through counsel, brings this action against Defendants

3  Hangzhou Chic Intelligent Technology Co., Ltd., ("Chic") and Unicorn Global, Inc.

4  ("Unicorn," collectively "Defendants") under Federal Antitrust Laws, the California

5  Cartwright Act, the California Unfair Competition Law, and Common Law, and

6  alleges as follows:

7  ## NATURE OF THE ACTION

8    1.    This is a civil action for violation of the Sherman Act (15 U.S.C. §§1-2).

9  Plaintiff's claims are based on Defendants' sham litigations against Plaintiff and

10  other competitors, asserting objectively baseless claims to enforce patents known to

11  be unenforceable and/or not infringed, with the intent to directly interfere with and

12  adversely affect the business operations of Plaintiff and other competitors, while

13  attempt to monopolize the self-balancing electric scooter/hoverboard market.

14    2.    Plaintiff also brings this action, in part, under California law against

15  Defendants for their tortious interference with Plaintiff's business operations.

16  Defendants' intentional conducts have resulted in tortious inference with, and

17  disruption of, Plaintiff's existing and prospective business relationship with

18  potential customers and suppliers.

19

20

**PARTIES**

3.      Plaintiff Yanjin-US is a Chinese company organized and existing under laws of China, having its principal place of business in Shenzhen, China.

4.      Plaintiff owns and operates an Amazon storefront named "Yanjin-US." Plaintiff sells Gyroor-brand Electric Roller Skates, also known as "hover shoes" (shown below), through its Amazon storefront.

 

5.      Defendant Chic is a Chinese company incorporated and located in Hangzhou, China.

6.      Defendant Unicorn is a corporation incorporated under the laws of the State of California with its principal place of business in Ontario, California.

7.      Defendants manufacture, import, export, distribute, and sell hoverboard products in the United States.

**JURISDICTION AND VENUE**

8.      The Court has original subject matter jurisdiction over the claims in this action under the antitrust laws of the United States, particularly the Sherman Antitrust Act, 15 U.S.C. §1, *et seq*. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

9.      Venue is proper in this Court under 28 U.S.C. §1391 in that Defendant Unicorn resides within this Judicial District.

**GENERAL ALLEGATIONS**

10.      Upon information and belief, Defendants employ exclusionary conducts to exclude their competitors from the relevant market in furtherance of attempting to monopolize the self-balancing electric scooter/hoverboard market by repeatedly bringing sham litigations against their competitors or innocent third parties.

**A.  The Relevant Antitrust Market**

11.      The antitrust product market unreasonably restrained by Defendants is the self-balancing electric scooter market.

12.      A self-balancing electric scooter (also known as hoverboard, self-balancing board, or electric scooter board) is a self-balancing personal transporter consisting of two motorized wheels connected to a pair of articulated pads on which

the rider places their feet. The rider controls the speed by leaning forwards or backwards, and direction of travel by twisting the pads.

13.   The self-balancing electric scooter has become very popular among households around the world as it is a sports utility that can be used for recreational purposes as well as for other uses including but not limited to as a personal commute transportation solution.

14.   Nowadays, everyone can purchase a self-balancing electric scooter on online marketplaces or different stores in his or her respective regions. In 2020, the global hoverboard electronic scooter market was valued at $781.2 million.[1] This market is expected to be worth around US $1,312.3 million by 2030.[2]

15.   Among the global regions, North America contributed the highest revenue in an amount of $274.2 million in 2020, and is estimated to reach $402.6 million by 2030.[3]

16.   The Federal Trade Commission and the Department of Justice, as well as many courts, use a hypothetical monopolist test to identify antitrust markets. Under this test, the market is defined by the smallest set of products in which the

---

[1] *See* Hoverboard Scooter Market by Type (Compact Size, Mid-size, and Full Size), Application (Personal Mobility Device and Business Purposes), Sales Channel (Online Sales and Offline Sales), and Speed Limit (Less than 15 Kmh and More than 15 Kmh): Global Opportunity Analysis and Industry Forecast, 2021–2030, https://www.alliedmarketresearch.com/hoverboard-scooter-market-A12257
[2] *Id.*
[3] *Id.*

only seller of a product (i.e., the hypothetical monopolist) could profitability increase prices by a small but significant and non-transitory amount ("SSNIP").

17.    Under the hypothetical monopolist test, the self-balancing electric scooter market is a relevant market as a hypothetical monopolist could profitably increase prices of hoverboard and related products by a SSNIP.

18.    Consumers have no reasonable alternatives when choosing self-balancing electric scooter products. Other products such as motorcycles, bicycles, and others are not reasonably interchangeable with self-balancing electric scooter products. The industry recognizes the difference between self-balancing electric scooter products and other means of transportation in terms of weight, cost, and convenience. The mobility and convenience of the self-balancing electric scooter are not interchangeable with and cannot reasonably substitute for other forms of transportation due to its substantive differences. The self-balancing electric scooter market is global in scope, as customers can buy the products from around the world.

19.    There are barriers to enter into the self-balancing electric scooter products market. The self-balancing electric scooter products industry is vulnerable to substantial financial loss due to the volatility of the unstable market conditions with drastic fluctuation in pricing and demand/supply. Such cyclical behavior discourages entries.

20.     The patent licensing process also imposes a significant burden on a new entrant interested in selling self-balancing electric scooter products to consumers. New entrants have to spend substantial amounts of time on researching and establishing relevant patent rights, or a great amount of licensing fees have to be paid before entering into the market. Such expenses and time commitments present a high entry barrier for the self-balancing electric scooter market.

21.     The market for self-balancing electric scooter products is highly concentrated. Upon information and belief, as of 2019, Swagway LLC ("Swagway"), Tomoloo Technology Industrial Co., Ltd. ("Tomoloo"), and Chic were holding significant market shares of self-balancing electric scooter in the world. Upon information and belief, Chic now is one of the biggest self-balancing electric scooter manufacturers and sellers in the world.

22.     Upon information and belief, Defendants have been centering on using of sham litigations to seek a monopoly and/or to eliminate their competitors from the self-balancing electric scooter market in order to reach their market-share gain.

**B.  Defendants' Sham Litigation and Objectively Baseless Enforcement of Their Patent Rights Against Plaintiff.**

23.     On or about August 17, 2020, Defendants initiated a lawsuit captioned *ABC Corporation I et al (Hangzhou Chic Intelligent Technology Co., Ltd and Unicorn Global, Inc.) v. The Partnerships and Unincorporated Associations*

*Identified on Schedule "A"*, No. 1:20-cv-04806 (E.D. Ill) in the United State District Court for the Northern District of Illinois (the "Illinois Lawsuit").

24.   In the Illinois Lawsuit, Defendants allege that four of Chic's U.S. Design Patents D737,723 ("D'723 patent"), D738,256 ("D'256 patent"), D785,112 ("D'112 patent"), D784,195 ("D'195 patent") (collectively, "Patents-in-suit") have been infringed by the Gyroor-branded products made or sold by their competitor Gyroor.

25.   Patents-in-suit are particularly designed for hoverboard products and shown with the Patent number as follows:



-8-
COMPLAINT

26.     On or about November 19, 2020, Defendants subsequently amended its Complaint in the Illinois Lawsuit.

27.     On or about November 20, 2020, Defendants applied for a preliminary injunction in the Illinois Lawsuit, and the Preliminary Injunction Order was granted and entered by the District Court on or about October 6, 2021.

28.     On or about October 21, 2021, Plaintiff received a notice from Amazon stating that its entire listings were removed because Plaintiff has infringed the Patents-in-suit. Plaintiff was suggested to contact Defendants' counsel in the Illinois Lawsuit.

29.     Upon receiving this notice, Plaintiff was astonished as it had never purchased or sold any hoverboard products.

30.     On or about January 13, 2022, more than 90 days after the Illinois Lawsuit issued the Preliminary Injunction Order, Defendants for the first time contacted and notified Plaintiff about the Preliminary Injunction Order issued and enforced against Plaintiff.

31.     On or about February 7, 2022, Plaintiff, through its counsel, contacted Defendants.

32.     On or about April 4, 2022, after a lengthy investigation, Defendants found out and admitted that the Plaintiff Yanjin-US was wrongfully restrained and "should not have its assets restrained" in Illinois Lawsuit.

33.     On or about April 18, 2022, Plaintiff formally requested to have its Amazon account released by Defendants.

34.     On or about April 25, 2022, Defendants refused to release Plaintiff's wrongful restrained Amazon account, denying their involvements in seeking and enforcing the preliminary injunctions against Plaintiff, reasoning "[Chic and Unicorn have] asserted no claims against [Yanjin-US], we never requested that [Yanjin-US'] assets be restrained."

35.     Notwithstanding the facts that Defendants unreasonably took two months to check the named defendants on a single lawsuit and failed to clarify the wrongful enforcement with Plaintiff's business partner, Amazon, Defendants' refusal to release Plaintiff's Amazon account reflected their intention to eliminate competitors in the self-balancing electric scooter market.

36.     Moreover, Defendants' refusal to release Plaintiff from the Preliminary Injunction Order was made in bad faith especially where Plaintiff reached out to Defendants insisting that its products bear no similarity to Patents-in-suit in Illinois Lawsuit, providing compelling facts as shown in the chart below, and asking for release from the Preliminary Injunction Order.

37.     As shown in the chart below, Patents-in-suit and Plaintiff's hover shoes products are plainly dissimilar as no reasonable person would find those designs are

substantially the same and no reasonable person or litigant could realistically expect Defendants' success on the merits.

| Comparison between Patents-in-suit and Plaintiff's Product | |
| --- | --- |
| Patents-in-Suit D737,723 Patent | Patents-in-Suit D738,256 Patent |
|  |  |
| Patents-in-Suit D784,195 Patent | Patents-in-Suit D785,112 Patent |
|  |  |
| Electric Roller Skate (hover shoes) sold by Yanjin-US | |
|  |  |

38.     Patents-in-suit are designed for hoverboards not hover shoes. Plaintiff's hover shoes products are no way related to Patents-in-suit. Therefore, Defendants

have no legitimate purpose or ground for obtaining and enforcing a preliminary injunction against Plaintiff in the Illinois Lawsuit. Defendants' maliciously obtained and viciously enforced preliminary injunction forced Plaintiff to remove its legitimate listings, close its business on Amazon and cease selling any Gyroor-branded products.

39. As a direct and proximate result of the violation alleged herein, Plaintiff's contractual relationships with Amazon and its existing and prospective customers have been disrupted. Plaintiff was forced to cease selling its hover shoes products through Amazon and to customers, which have caused serious interference with Plaintiff's business operation.

40. By bringing this sham and baseless litigation resulting a wrongful restraint over Plaintiff, Defendants had framed or at least intended to frame Plaintiff as a patent infringer. Plaintiff's business had been unlawfully deterred due to Defendants' false statements and their refusal to release. Plaintiff's goodwill and business reputation have been negatively affected. Plaintiff's reputation and its Amazon store ranking have been ruined.

41. By wrongfully enforcing the Preliminary Injunction Order against Plaintiff, Plaintiff has suffered tremendous loss. Plaintiff has lost its capacity to generate any revenues or profits in the United States. Further, Plaintiff's ability to uphold its contractual obligations with Amazon and its consumers was interfered.

42.     All of Defendants' acts described above, including its baseless patent infringement suit and wrongfully-enforced preliminary injunction against Plaintiff, were committed by Defendants in bad faith, which the sole purpose is to impose anticompetitive effects on any retailer who carries on Gyroor-branded products, rather than the attempt to obtain a fair result from the court process.

43.     Defendants' unlawful conducts were in violation of the Federal and California antitrust laws as well as common law unfair competition and/or unfair trade practices.

## C.  Defendants' Substantive Antitrust Violations

44.     At all material times, Defendants have been notoriously known for bringing baseless infringement claims against their competitors and/or innocent parties to gain market monopoly.

45.     Upon information and belief, Chic and Unicorn entered into an exclusive distribution agreement and are the parties of plentiful settlement and/or licensing agreements. Also, they are listed as co-plaintiffs at various patent infringement cases, including the Illinois Lawsuit ("Defendants' Agreements").

46.     Beginning in early August 2016, Chic issued Cease & Desist letters to more than a dozen retailers for Swagway, one of its biggest competitors in the self-balancing electric scooter market, demanding immediate desistance of patent infringement activities. Some retailers complied, yet others continue to sell the

infringing products. *See Hangzhou Chic Intelligent Technology Co., Ltd. v. Swagway LLC*, Case No. 16-cv-04804-HSG (N.D. Cal. 2016).

47.    On or about August 19, 2016, Chic brought a patent infringement lawsuit in the U.S. District Court Northern District of California against Swagway while Swagway counter claimed that Chic made false and defamatory comments regarding its products.

48.    In the same year, Chic incorporated with the same strategy filling a patent infringement lawsuit in the U.S. District Court Central District of California against one of its biggest self-balancing electric scooter competitors, Razor USA LLC ("Razor").

49.    Beginning in 2018 and continuing through February 2019, Chic began lodging complaints with Amazon, asserting that the self-balancing electric scooter sold and produced through Golabs, Inc. ("Golabs") infringed on Chic's design patents.

50.    On or about March 26, 2019, Unicorn brought another patent infringement lawsuit in the U.S. District Court Northern District of Texas against Golabs.

51.    On or about August 17, 2020, Defendants initiated the Illinois Lawsuit against Plaintiff and Shenzhen Chetaidou Technology Co., Ltd. (d.b.a "Gyroor" and

owner of Gyroor Brand), one of Defendants' biggest self-balancing electric scooter competitors.

52.     On or about March 18, 2021, Defendants again, incorporated with the same strategy, filed another patent infringement lawsuit against its competitor, DGL Group, Ltd., in the U.S. District Courts, New York Eastern District.

53.     Upon information and belief, Defendants also have threatened to file patent infringement lawsuits against various competitors and their retailers by issuing numerous demand letters.

54.     Those lawsuits brought by Defendants are subjectively motivated by their intents to eliminate competition in and exclude competitors from the self-balancing electric scooter market. Defendants have filed and maintained the lawsuits not because they have reasonable chances of prevailing on the merits, but because they hope to use the lawsuits as an anticompetitive weapon to attack other competitors who are in the self-balancing electric scooter markets.

55.     Defendants' Agreements have had and continue to have an exclusionary effect that unreasonably restrains trade as all the infringement lawsuits brought by Defendants were a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of their competitors.

56.    Particularly, the Illinois Lawsuit against Plaintiff are objectively baseless in the sense that no reasonable litigant could realistically expect Defendants' success on the merits. Even though Defendants acknowledged that Plaintiff's hover shoes did not infringe Patents-in-Suit, Defendants denied their wrongdoings and falsely claimed that they were not involved in the wrongfully brought Illinois Lawsuit and the enforcement of the Preliminary Injunction Order against Plaintiff.

57.    Defendants' assertions of infringement against Plaintiff have demonstrated Defendants' bad faith. Defendants made false statements to the court and the public alleging that Plaintiff's hover shoes products infringed Patents-in-suit by knowing otherwise.

58.    Defendants also use of the governmental process as an anticompetitive weapon by unlawfully expanding the scope of the Preliminary Injunction Order entered in the Illinois Lawsuit.

59.    In the Illinois Lawsuit, Defendants filed a complaint against numerous defendants. Subsequently, Defendants amended the complaint, and the Preliminary Injunction Order was entered.

60.    The Preliminary Injunction Order was entered against defendants who operate e-commerce stores under one or more seller aliases identified in the attached Schedule A, Schedule B, and Schedule C (the "Original Schedules"). However, the

Original Schedules were not attached to the Preliminary Injunction Order as part of the court record.

61. After the Preliminary Injunction Order was entered, Defendants enforced the Order against numerous non-parties.

62. Thereafter, to resolve any ambiguity that has arisen due to previous reliance on language relating to affiliates, those in 'active concert or participation, Defendants moved to add non-parties, against whom the Preliminary Injunction Order, as named defendants. The new list of defendants and accused products were listed in the "Amended Schedule A."

63. Aside from non-parties being added as named defendants, the "Amended Schedule A" is more extensive than the Original Schedules.

64. By wrongfully enforcing the Preliminary Injunction Order with mere conclusory allegation, adding resellers of Gyroor-branded products to the preliminary injunction order at will, and restraining of Gyroor-branded resellers' relevant assets, Defendants intentionally targeted their competitor Gyroor and relevant Gyroor brand.

65. In the end, all the market participants have ceased purchasing anything from Gyroor and/or selling any Gyroor-brand products as they are afraid that their assets may be restrained by the Preliminary Injunction Order if Gyroor-branded products are sold. Eventually, Gyroor has been eliminated from the self-balancing

electric scooter market as it is unable to sell any self-balancing electric scooter products to any consumers in the United States.

66.     By eliminating Gyroor from the self-balancing electric scooter market, Defendants' market shares in the self-balancing electric scooter market have increased, and their market powers have been enhanced.

67.     As numerous lawsuits have been filed by Defendants, most of the parties had reached settlements with Defendants by ending up with signing the licensing and/or settlement agreements with Defendants and/or paying great amount of royalties to Defendants.

68.     When each and every self-balancing electric scooter sold in the market will have to pay royalty to Defendants, not only the consumer is paying more for the "license" but will ultimately result a monopoly.

69.     Overall, the competitions in the self-balancing electric scooter market have been reduced, and the smaller businesses and consumers in the market have been harmed.

## INTERSTATE COMMERCE

70.     The products at issue in this action are sold in interstate commerce, and the unlawful activities alleged in this Complaint have occurred in, and have a substantial effect upon, interstate commerce.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF SECTION 1 OF THE SHERMAN ACT (15 U.S.C §1)

71. Plaintiff incorporates herein by reference each of the allegations of paragraph 1 through 66 above, as though set forth in full.

72. Upon information and belief, Defendants have engaged in the predatory conduct described above with a specific intent to restrain the trade and commerce described above in violation of Section 1 of Sherman Act, 15 U.S.C. §1.

73. Upon information and belief, the aforesaid violations of the Sherman Act consisted, without limitation, of a continuing contract, combination, conspiracy, trust, and concert of action among the Defendants and others, concerning the sale or distribution of the self-balancing electric scooter products.

74. Upon information and belief, the aforesaid contract, combination, conspiracy, trust, and concert of action has had the following effects including competition in the sale of self-balancing electric scooter products has been suppressed and/or restrained; prices of the self-balancing electric scooter products have been raised fixed, maintained, and stabilized at artificial and non-competitive levels.

75. By reasons of the violations of the antitrust laws, Plaintiff has been injured in its business and property and has suffered damages in an amount according to proof at trial.

## COUNT II
## <u>VIOLATION OF SECTION 2 OF THE SHERMAN ACT (15 U.S.C §2)</u>

76.    Plaintiff incorporates by reference the allegations contained in paragraph 1 through 71 above, as though set in full.

77.    Upon information and belief, the self-balancing electric scooter product market is a valid antitrust market. The market is global in scope and includes the United States.

78.    Upon information and belief, the conduct of Defendants complained of herein occurred in or affected interstate commerce.

79.    Upon information and belief, Defendants willfully acted to attempt to acquire and maintain monopoly power in the relevant self-balancing electric scooter product market by engaging in anticompetitive conduct.

80.    Upon information and belief, Defendants willfully acted with the specific intent to monopolize the relevant self-balancing electric scooter product market and that there is dangerous probability of Defendants achieving and/or further enhancing monopoly power in the relevant market and to lessen and/or destroy competition in that market.

81.    Upon information and belief, Defendants have intentionally attempted to obtain monopoly power and the ability to control prices in the market.

82.    By harming Plaintiff, Defendants' conduct has the further effect of harming other competitors, customers and consumers in the market.

83.    Upon information and belief, Defendants possess monopoly the relevant market.

84.    Upon information and belief, Defendants willfully acted to acquire and maintain monopoly power in the relevant market by engaging in its anticompetitive conduct.

85.    Upon information and belief, Defendants' actions have had or will have the following effects: competition in the market has and will be impaired and restrained, and Defendants have illegally obtained the power to control prices and/or restrain and exclude competition in the market, thereby affecting interstate commerce.

86.    Unless Defendants exclusionary and anticompetitive way are declared to be unlawful, Plaintiff is and will continue to be injured in its business and property and will suffer substantial and irreparable harm.

## COUNT III
## VIOLATION OF THE CA CARTWRIGHT ACT
## (CAL BUS. & PROF CODE §16720)

87.    Plaintiff incorporates by reference the allegations contained in paragraph 1 through 82 above, as though set in full.

88.    Upon information and belief, Defendants' unlawful activities harm competition in the market by eliminating their competitors from the competition. The agreement between Defendants also has the effect of raising costs for consumers,

thus weakening competition, further enhancing their monopoly and ability to raise prices, and unreasonably restrain trade.

89.     The conspiratorial conduct alleged herein has harmed and continues to harm competition for self-balancing electric scooter products, which are products in the flow of interstate commerce.

90.     As a result of the conduct alleged herein, Plaintiff, its customers, and the consuming public are and will continued to be harmed in the form of increased prices and decreased competition in the market.

### COUNT IV
### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
### (CAL BUS. & PROF CODE §17200)

91.     Plaintiff incorporates by reference the allegations contained in paragraph 1 through 86 above, as though set in full.

92.     By the acts and conduct alleged, Defendants have engaged in unfair competition within the meaning of the California Business & Professions Code §17200, et seq. and the common law.

93.     The acts of Defendants violate and/or threaten to violate the policy or spirit of the antitrust laws, and otherwise significantly threaten and/or harm competition. By the deceptive acts, practices, and conduct alleged above, Defendants are violating Section 1 and 2 of the Sherman Act and 16700 et seq. of the Cartwright

Act, Cal. Bus. & Prof Code Section, which has injured competition, as well as consumers in California and elsewhere.

94.     By reason for Defendants' acts, Plaintiff also has suffered, and will continued to suffer, irreparable harm, for which Plaintiff has no adequate remedy at law. Unless and until Defendants' conducts are enjoined, Defendants will continue to engage in the acts alleged herein.

95.     Plaintiff is entitled to relief, including an injunction and/or restitution.

**COUNT V**
**TORTIOUS INTERFERENCE WITH**
**CONTRACTUAL RELATIONSHIP**

96.     Plaintiff incorporates by reference the allegations contained in paragraph 1 through 91 above, as though set in full.

97.     "To recover in tort for intentional interference with the performance of a contract, a plaintiff must prove: (1) a valid contract between plaintiff and another party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. [Citation.] In this way, the 'expectation that the parties will honor the terms of the contract is protected against officious intermeddlers." *(Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 514, fn. 5, 28 Cal.Rptr.2d 475, 869 P.2d 454.

98.    Plaintiff had a valid and existing contract with Amazon to sell its hover shoes products through its Amazon storefront.

99.    Defendants knew or should have known of Plaintiff's contractual relationships with the Amazon, because Defendants' false allegations were made against Plaintiff's Amazon storefront.

100.   Defendants intentionally interfered with Plaintiff's contractual relationships with Amazon.com. Defendants knowingly and intentionally, by ways of adding Plaintiff's to the Preliminary Injunction Order and asserting false allegations of patent infringement against Plaintiff, requested Amazon to remove Plaintiff's product listing and to restrain Plaintiff's assets.

101.   As a result of Defendants' wrongful acts, Plaintiff's products were delisted and eliminate from competition.

102.   After acknowledging Plaintiffs products did not infringe, Defendants intentionally delayed the process of requesting Amazon to reinstate Plaintiff's listing. When challenged, Defendants denied their involvement in the wrongdoing of seeking to enforce the preliminary injunctions against Plaintiff, falsely claimed that they never requested asset restrain on Plaintiff.

103.   Plaintiff has suffered direct, proximate and foreseeable damages and continues to suffer direct, proximate and foreseeable damages.

1    104.   By reason of Defendants' acts, Plaintiff is entitled to equitable remedies

2    and damages in an amount to be proven at trial.

3                              **COUNT VI**
                    **TORTIOUS INTERFERENCE WITH**
4               **PROSPECTIVE ECONOMIC ADVANTAGE**

5    105.   Plaintiff incorporates by reference the allegations contained in

6    paragraph 1 through 100 above, as though set in full.

7    106.   Plaintiff has valuable business relationships with its customers in this

8    Judicial District and throughout the United States. Defendant knew or should have

9    known these business relationships because Defendants are fully aware that Plaintiff

10   was selling its hover shoes through Amazon and to its customers.

11   107.   There were existing business or economic relationships between

12   Plaintiff and its customers, and these relationships were reasonably certain to

13   produce further economic benefits to Plaintiff.

14   108.   On information and belief, Defendant intentionally and in bad faith

15   committed wrongful acts designed to interfere with or disrupt these relationships by

16   alleging Plaintiff's hover shoes infringed Defendants' patents of hoverboard

17   products and refusing to unfreeze Plaintiff's Amazon account and assets after the

18   preliminary injunction was wrongfully issued to Plaintiff.

19   109.   Plaintiff suffered damages caused by the disruption of the above-

20   mentioned relationships.

110.   Plaintiff is informed, and believes, and based thereon alleges that Defendants acted with fraud, malice, and oppression, such that an award of punitive damages is justified.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1.     For judgement that Defendants have violated section 1 of the Sherman Act (15 U.S.C §§1);

2.     For judgement that Defendants have violated section 2 of the Sherman Act (15 U.S.C §§2);

3.     For judgement that Defendants have violated section 16720 of the Cartwright Act (Cal. Bus. & Prof. Code §16720, *et seq*.);

4.     For judgement that Defendants have violated section 17000 of the California Business Profession Code.

5.     For an award of damages according to proof, trebled as required by law (15 U.S.C §15 and Cal. Bus. & Prof. Code §§16750 and 17082).

6.     For judgment that Plaintiff recovers from Defendants its reasonable attorneys' fees.

7.     For judgment that Plaintiff recovers from Defendants prejudgment interest.

8.     For judgment that Plaintiff recovers from Defendants its costs.

9.     Any relief as the Court deems appropriate.

Date: 07/06/2022                              /s/ Tianyu Ju
                                             Tianyu Ju, Esq.
                                             iris.ju@glacier.law
                                             Glacier Law LLP
                                             ***Attorney for Plaintiff***